**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **MAMADOU JOBE** | **CIVIL ACTION NO. 25-1391** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JERRY EDWARDS, JR.** |
| **BRIAN ACUNA, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Mamadou Jobe,[1] a detainee in the custody of the Department of Homeland Security and the Bureau of Immigration and Customs Enforcement, petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 12].  For reasons that follow, the Court should grant Petitioner's request for release from custody.

### Background

Petitioner is a citizen of Senegal; he entered the United States of America in 1989.  [doc. # 1, p. 2].  He was ordered removed from the United States on November 10, 2011.  *Id.*  He appealed the removal order to the Board of Immigration Appeals.  *Id.*  The Board dismissed his appeal, "rendering the removal order final on March 20, 2014."  *Id.*  He "was released on an order of supervision on February 29, 2016."  *Id.*

On December 14, 2017, ICE detained Petitioner again.  [doc. # 1, p. 2].  On August 7, 2019, he was released from detention (he was detained 601 days, or 1 year, 7 months, 24 days).

---

[1] Petitioner's 'A Number' is 088-057-445.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On March 17, 2025, ICE detained Petitioner again.  [doc. # 1, p. 3].  He remains detained.

Respondents maintain that on April 16, 2025, Enforcement and Removal Operations ("ERO") "sent a request to the Senegalese Consulate for a new travel document for Petitioner." [doc. # 12, p. 2].

On either July 21, 2025, or August 11, 2025, Petitioner had an interview with the Senegalese Consulate.  [doc. #s 1; 12, p. 2]  He answered all questions and provided all the information they asked for.  He maintains that the Senegalese Consulate told ICE that it "will not provide" him a travel document and that ICE should release him.  [doc. # 13-1; 1, pp. 3, 13]. Respondents maintain that the consulate later stated that the results of the interview were inconclusive and that additional information was required before a travel document could be issued.  [doc. # 12-1, p. 2].

On July 23, 2025, "ERO sent a request to ERO Headquarters for assistance in obtaining a new travel document or Senegalese passport for Petitioner."  [doc. # 12, p. 2].

Petitioner filed this proceeding on September 19, 2025.  [doc. # 1].  He claims that his "detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been in custody for more than six (6) months and there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.* at 3.  He argues, "Despite having nearly 2 years to secure travel documents from Senegal, ICE was unable to effectuate Petitioner's removal."  *Id.* at 12. According to him, "Senegal's longstanding non-cooperation and/or ICE's inability to obtain travel documents for [him] confirm that removal is not reasonably foreseeable."  *Id.* at 13.  He "fully complied with the conditions of his supervised release in 2016 following his final order of removal and again in 2019 . . . after spending 20 months in detention."  *Id.*

On December 10, 2025, Petitioner was transferred to JFK International Airport for a removal flight to Senegal.  At the gate, the airline refused to board Petitioner because he did not have a valid unexpired Senegalese travel document or passport.  [doc. # 12, p. 2].  Respondents state that as of the filing of their response, "ERO has been unable to obtain a travel document for Petitioner and has been unable to effectuate Petitioner's removal to Senegal but is still actively trying to remove Petitioner to Senegal, and if unsuccessful, ERO will pursue removal to another third country."  *Id.*

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . .  or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien."  *Jennings v.*

3

*Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."  *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  First, following his final order of removal, he was detained 601 days (or 1 year, 7 months, 24 days).  Following his second detention, he has to date been detained 350 days (or 11 months, 13 days), bringing his total time in detention to 951 days.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  His order of removal became final on March 20, 2014.  And as above he has been detained since March 17, 2025.  Yet, for 601 days (or 1 year, 7 months, 24 days), the Government was unable to remove him.  Under his present detention, the Government has been unable to obtain a travel document for him, despite multiple attempts and despite his full cooperation, for 350 days (or 11 months, 13 days).

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Respondents do not rebut Petitioner's showing.  They do not provide any evidence indicating that travel documents are forthcoming, that ICE has made meaningful progress in effectuating Petitioner's removal, or that Petitioner has not fully cooperated with ICE.

Respondents argue without evidence that they have no travel documents for Petitioner because "the processes for obtaining a temporary travel document from another country . . . include considerations of diplomacy that are beyond the control of ICE."  [doc. # 12, p. 5].   To the extent they fault Senegal for not issuing a travel document for Petitioner or for not engaging in diplomacy, Respondents appear to suggest, in Petitioner's favor, that Senegal is not cooperating with the United States's deportation efforts.

Petitioner maintains that the Senegalese Consulate stated at the interview that it would not provide a travel document for him and that ICE should release him.  [doc. #s 1, p. 3; 13-1, p. 1].  Respondents do not dispute Petitioner's evidence.  At best, they suggest that *after* the interview, the Senegalese Consulate notified ERO of the "results" of the interview and allegedly stated that "additional information was required before a travel document could be issued to Petitioner."  [doc. # 12-1, p. 1].  Respondents, however, only provide additional evidence that a travel document is not forthcoming.  For instance, they neither identify the "additional information" that the Senegalese Consulate requires nor state that they intend to gather additional information.

Respondents state that they are "actively making efforts to remove" Petitioner, but they do not identify any "active efforts."  [doc. # 12, p. 6].  They also state that if they are unable to remove Petitioner, they "will pursue removal to another third country."  *Id.*  However, as Petitioner aptly states, "Respondents have made the generalization that it will seek to remove [him] to a third country without designating any particular country or providing any proof that a

said country is even willing to receive [him], that said country has not met its quota or is willing to issue him a travel document." [doc. # 12, p. 5]. In addition, Respondents do not indicate that they have even started this process. And they do not state how long it would take.

Respondents next contend: "This Petition should be dismissed, like the petitions in *Fahim v. Ashcroft* and *Nagib v. Gonzales*. In both cases, courts found that the aliens had not met their burdens because the only evidence of a good reason to believe there was no significant likelihood of a reasonably foreseeable removal was the time in detention and the assertion that the receiving country had not yet issued travel documents." [doc. # 12, p. 6]. The undersigned expresses no agreement or disagreement with the disposition of those cases, but it suffices that they are materially distinguishable. In *Fahim*, unlike here, the Government " sent an emergency travel document request to the Egyptian Embassy[,]" it flew "petitioner to the Egyptian Embassy . . . for an interview to try to move along the process" three months before he filed his habeas corpus petition, and the petitioner also had a "passport that would facilitate his return to Egypt" which he failed to produce. *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1362 (N.D. Ga. 2002). In *Nagib*, ICE had "formally requested travel documents" from the Sudanese Embassy, the embassy later advised a deportation officer that his travel document request was still pending, and the Sudanese government had in the past issued travel documents to Sudanese citizens. *Nagib v. Gonzales*, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006).

On December 10, 2025, Petitioner was transferred to JFK International Airport for a removal flight to Senegal. At the gate, the airline refused to board Petitioner because he did not have a valid unexpired Senegalese travel document or passport. [doc. # 12, p. 2]. Attempting to place Petitioner on an international flight without a valid travel document or passport does not reflect a genuine effort to remove him. The Government ought to know, and likely does, the

6

requirements for boarding an international flight.  The undersigned concurs with Petitioner: "The fact that Respondents attempted to remove [him] on December 10, 2025, but were unable due to not having a travel document is further proof that [he] will not be able to be removed in the reasonably foreseeable future."  [doc. # 13, p. 4].

Further, that Respondents have not obtained a travel document following the first request submitted on April 16, 2025 (over 10 months ago) suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  [doc. # 12-1, p. 1]. The longer a request for travel documents remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.  Respondents tellingly concede that "ERO has been unable to obtain a travel document for Petitioner and has been unable to effectuate Petitioner's" removal.  [doc. # 12, p. 2].

Moreover, Respondents do not present any evidence to rebut Petitioner's argument that, "In total including the prior failed removal attempts, [Petitioner] has spent 29 months in detention and during that entire time, neither Senegal nor any other country has ever issued [him] a travel document."  [doc. # 13, p. 4].

Respondents provide no reasons to conclude that  a travel document is forthcoming.[4] They do not, for example, provide any evidence that they have made progress in obtaining travel

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than

documents, that Senegal has recently accepted other deportees similarly situated to Petitioner, that Senegal has an agreement or treaty with the United States affecting Petitioner's removal, or that Senegal is willing to accept Petitioner.[5]  In addition, while not dispositive, the undersigned finds it persuasive that Respondents had 11 years, 11 months, and 10 days to try and remove Petitioner after his order of removal became final, yet they have been unable to remove him.

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence.  "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at \*5 (S.D. Tex. 2008).  As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

---

stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at \*5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at \*5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at \*2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[6]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Mamadou Jobe's petition for habeas corpus be **GRANTED**: Respondents, including the warden of Pine Prairie Correctional Facility, shall (A) immediately release Petitioner from custody without bond under reasonable conditions of supervision to be established by an ICE deportation officer and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[7]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another

---

[6] The undersigned finds no need to address any claim or request for relief not addressed herein. In addition, while Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"), recovery of attorney fees under the EAJA is not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

[7] In other words, it is the intent of the Court that Petitioner should not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 3rd day of March, 2026.


_____
Kayla Dye McClusky
United States Magistrate Judge